UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: DEEPWATER HORIZON
BELO CASES

Case No. 3:19cv963-MCR-HTC

*This Order Relates to:*

Edna Mae Rivers, 3:20cv29
_____/

REPORT AND RECOMMENDATION

Plaintiff Edna Mae Rivers sues Defendants BP Exploration & Production Inc. and BP America Production Company (collectively, "BP") for injuries she contends were caused by exposure to chemicals associated with the Deepwater Horizon oil spill. BP moves for summary judgment based on Plaintiff's failure to present a causation expert by the expert disclosure deadline. Doc. 36. Plaintiff filed a response asking the Court to deny or defer a decision on the motion until she had time to review certain documents and complete expert discovery, Doc. 37, and BP filed a reply, Doc. 42. Plaintiff then filed a separate motion to excuse her untimely expert disclosures, Doc. 43, and BP responded in opposition, Doc. 44. After considering the parties' submissions and the relevant law, the undersigned finds Plaintiff's motion to excuse her untimely expert disclosures should be DENIED, and BP's motion for summary judgment should be GRANTED.

## I.    Background[1]

On April 20, 2010, a massive and unprecedented oil spill occurred in the Gulf of Mexico when the Deepwater Horizon mobile offshore oil-drilling rig, operated by BP and located approximately 125 miles offshore of Florida, exploded.  During the months immediately following the explosion, over 90,000 people and 7,000 vessels were employed to address the spill.  The incident resulted in thousands of claims being filed against BP, which were originally consolidated in the Eastern District of Louisiana as part of the Deepwater Horizon multidistrict litigation (MDL No. 2179) and presided over by Judge Carl J. Barbier.

The MDL court approved a comprehensive Medical Benefits Class Action Settlement Agreement for personal injury plaintiffs.  The Settlement Agreement provided a claims process for eligible class members who were diagnosed with a specified physical condition on or before April 16, 2012, and a separate litigation option for those seeking compensation for "Later-Manifested Physical Conditions" ("LMPCs"), defined as a physical condition diagnosed after the April 2012 cutoff date.  This separate litigation of claims is known as the "Back End Litigation Option" ("BELO").

---

[1] See *In re Deepwater Horizon BELO Cases*, 2020 WL 6689212 (N.D. Fla. Nov. 4, 2020) for a detailed discussion of the background of this litigation, the oil spill, the response and data collection, and the makeup and constituency of crude oil and dispersants.

Plaintiff alleges that from July 2010 to March 2011, she worked as a clean-up worker performing response activities in the aftermath of the oil spill. Doc. 1. Plaintiff claims she was exposed to toxic chemicals while performing those activities and, as a result, was diagnosed with chronic bronchitis. *Id.* Because Plaintiff's chronic bronchitis was diagnosed after April 16, 2012, it is an LMPC.

Plaintiff initially filed this case in the Eastern District of Louisiana on July 3, 2019. *Id.* On January 6, 2020, the parties stipulated to the transfer of this case to this Court as part of the BELO litigation. Doc. 6. The case was transferred on January 8, 2020, Doc. 7, and stayed pending resolution of the "First Trial Pool" cases, Docs. 10 & 12. On February 22, 2021, the Court entered a Case Management Order ("CMO") governing this case which included the following deadlines: a discovery deadline of February 22, 2022, and a dispositive motion deadline of April 25, 2022. Doc. 15. The CMO also specifically stated that "expert witnesses not timely disclosed or whose opinions have been significantly modified or changed after discovery has ended, will normally not be permitted to testify at trial." *Id.* at 8.

On October 13, 2021, this case was stayed a second time pending the Court's resolution of a set of BELO test cases involving sinusitis and ocular conditions.[2] Master Doc. 348. On May 9, 2023, the stay was lifted and a new CMO was entered,

---

[2] Plaintiff's complaint also alleged chemicals associated with the oil spill and response caused her chronic conjunctivitis. Doc. 1 at 6. Plaintiff's chronic conjunctivitis claim was dismissed with prejudice on April 20, 2023, based on the resolution of the ocular test cases. Doc. 28.

setting Plaintiff's expert disclosure deadline as September 29, 2023, BP's expert disclosure deadline as December 13, 2023, and the discovery deadline as February 26, 2024. Doc. 29 at 2.

On September 22, 2023, seven days before Plaintiff's expert disclosures were due, she filed a motion for an extension of time ("motion for extension"), Doc. 31, which BP opposed, Doc. 34, and which the Court denied based on her failure to show good cause for the extension, Doc. 35. Despite the looming expert disclosure deadline, Plaintiff did not seek emergency relief,[3] and the filing of the motion *did not* stay that deadline. Plaintiff also *did not* object to the undersigned's order denying the requested extension. *See* Fed. R. Civ. P. 72(a) (stating objections to a magistrate judge's non-dispositive order must be filed within 14 days and "[a] party may not assign as error a defect in the order not timely objected to"); *see also Hopkins v. JP Morgan Chase Bank, NA*, 618 F. App'x 959, 962 (11th Cir. 2015) (failure to object to a magistrate judge's non-dispositive order results in a waiver of the argument that the judge erred).

Nevertheless, Plaintiff failed to timely disclose any experts. Thus, on October 18, 2023, BP filed a motion for summary judgment based on Plaintiff's inability to establish causation through an expert witness. Doc. 36. On November 6, 2023, Plaintiff provided BP with expert reports from Dr. Ranajit Sahu and Dr. David

---

[3] *See* N.D. Fla. Loc. R. 7.1(L) on the filing of motions that require a prompt ruling.

Carpenter. Doc. 43 at 3. Dr. Carpenter provides a causation opinion and Dr. Sahu "provides an analysis of the chemistry data, Plaintiff's exposure, and the flaws in BP's expert reliance data." Doc. 37 at 26. Then, on November 8, 2023, Plaintiff filed her response to the motion for summary judgment ("Rule 56(d) response"), arguing the Court should deny or defer ruling on the motion under Rule 56(d) until the parties could complete expert discovery.[4] Doc. 37. Thirteen days later, on November 21, Plaintiff filed a motion to excuse her untimely expert disclosures ("motion to excuse"). Doc. 43.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."). The moving party bears the burden of establishing that there is no genuine dispute of fact and that the plaintiff has failed to establish an essential element of his claim. *See Allen v. Bd. of Pub. Educ*., 495 F.3d 1306, 1313 (11th Cir. 2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To avoid summary judgment, the nonmoving party must

---

[4] Plaintiff submitted the declaration of Jason Larey, Esq., in support of the Rule 56(d) response.

then go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal marks omitted). However, summary judgment cannot be avoided through evidence that is "inadmissible at trial." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1313 (11th Cir. 2014) (quoting *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007)).

### B.    Rule 56(d)

Under Federal Rule of Civil Procedure 56(d), a court may defer or deny a motion for summary judgment, or allow additional time for discovery, if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).  A Rule 56(d) movant cannot "simply rely on vague assertions that additional discovery will produce needed, but unspecified facts, but must specifically demonstrate how postponement of a ruling on the motion will enable [her], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1334 (11th Cir. 2021) (internal quotations omitted).  "Failure to satisfy [the rule 56(d)] burden is fatal to an argument that the district court granted summary judgment prematurely by failing to order or await the results of further discovery." *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1286 (11th Cir. 2019).  A Rule 56(d) movant must also have

been diligent in pursuing discovery. *See Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1310 (Fed. Cir. 2006). The decision to deny a Rule 56(d) motion is reviewed for an abuse of discretion. *See Burns*, 999 F.3d at 1330.

### C.    Rule 37(c)

When a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence at trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). The "party failing to comply with Rule 26 bears the burden of showing that its actions were substantially justified or harmless." *Murdick v. Catalina Mktg. Corp.*, 496 F. Supp. 2d 1337, 1345 (M.D. Fla. 2007) (citation omitted).

"Courts enjoy broad discretion under Rule 37(c)(1) to exclude evidence[.]" *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 763778, at *2 (N.D. Fla. Jan. 15, 2021) (citing *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019)) (noting that appellate courts review a district court's exclusion of evidence for an abuse of discretion). In exercising that discretion, courts generally consider the following four factors: "(1) the importance of the excluded material; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the material to be used at trial; and (4) the ability to cure such prejudice." *Id.* (citations omitted).

## III.    Discussion

### A.    Exponent Documents

Plaintiff's argument in both her Rule 56(d) response and her motion to excuse is that she could not disclose her expert reports by the September 29, 2023 deadline because she needed to review documents from Exponent, Inc., that were recently de-designated as privileged[5] and incorporate them into the reports.    However, this argument is meritless.

First, as the Court has stated ad nauseam, the connection between the Exponent documents—which Plaintiff believes show BP's data is unreliable—and Plaintiff's experts' causation reports has always been tenuous at best.[6]  *See, e.g.,* Doc. 35 at 4 ("Discovery showing BP's data or certain studies are unreliable will not help Plaintiffs affirmatively establish general and specific causation.  Plaintiffs' experts may say they declined to rely on BP's data or studies because it was biased

---

[5] Briefly stated, Plaintiff's counsel issued a subpoena to Exponent, a contractor BP hired to help with the spill response and with the natural resources damage assessment.  Exponent produced more than 788,000 pages of documents by March 28, 2023, but BP withheld some documents as privileged.  The parties litigated the privilege issue between June and October 2023 and, over that time span, BP de-designated approximately 28% of the roughly 5600 documents it had initially identified as privileged.  Plaintiff casts all blame for the delay in the Exponent production on BP.  However, as the Court stated when it partially granted the plaintiff's motion for attorneys' fees in *Culliver v. BP*, N.D. Fla. Case No. 3:21cv4942-MCR-HTC, Doc. 152, both sides bear some fault for how long it took to resolve the privilege dispute.

[6] Plaintiff's Rule 56(d) response includes an extensive discussion regarding the requirement that experts produce their reliance materials, data BP's experts have relied on in the past, and the possible utility of the Exponent documents in challenging BP's experts reports.  Doc. 37 at 14-24.  This discussion is irrelevant to the issue before the Court, which is whether Plaintiff could have produced her experts' reports by the September 29 deadline.

or flawed, but those experts are still required to find 'reliable' data and studies to show chemicals associated with the oil spill can cause the injuries Plaintiffs allege and those chemicals did, in fact, cause their injuries."); *Culliver v. BP*, N.D. Fla. Case No. 3:21cv4942-MCR-HTC, Doc. 105 at 4 ("[D]iscovery which impugns the quality of the Exponent data is highly unlikely to help Plaintiff's experts form reliable causation opinions.").

Second, despite repeatedly touting the importance of the Exponent documents to her expert reports, Plaintiff has failed to identify a single Exponent document which her experts relied on to form their opinions. The Court cited this failure as a reason to deny Plaintiff's motion for extension, Doc. 35 at 6-7, but both Plaintiff's Rule 56(d) response and her motion to excuse, which was filed after she produced her expert reports to BP, still fail to identify *any* Exponent documents that were relevant to and incorporated into the reports. The Exponent documents are simply a red herring which fail to provide any justification for Plaintiff's untimely expert disclosures. Likewise, while Plaintiff alleges "the *Culliver* discovery has bolstered the experts' opinions and provided additional document evidence," Doc. 43 at 6, Plaintiff has not identified any specific discovery from *Culliver* which Dr. Carpenter or Dr. Sahu considered or incorporated into their reports.

Third, as Judge Rodgers noted in May 2023 when she affirmed my order denying an extension of deadlines in the *Culliver* case, Plaintiff could move to

supplement her expert reports if a document was later discovered which materially impacted the experts' opinions. *See Culliver*, N.D. Fla. Case No. 3:19cv4942-MCR-HTC, Doc. 107 at 5-6. Thus, Plaintiff should have known that she should comply with the existing expert disclosure deadline and could move to supplement if necessary.[7]

In sum, Plaintiff has not shown her failure to comply with the expert disclosure deadline was due to or justified by the Exponent documents she recently received. Instead, after choosing to disregard that deadline, Plaintiff is attempting to generate the extension the Court previously denied through a misleading Rule 56(d) response and motion to excuse.[8]

---

[7] Plaintiff also briefly suggests complying with the existing expert disclosure deadline was not possible due to the unstaggered deadlines in certain BELO cases and Dr. Carpenter's limited availability. Doc. 43 at 9. Plaintiff made this argument in her September 22 motion for extension of time and the Court rejected it, noting Plaintiff had been aware of the unstaggered deadlines since May 2023 and had "not identified how any particular scheduling conflict or professional commitment prevented [her] experts from meeting the disclosure deadlines." Doc. 35 at 3. Plaintiff has still failed to make any specific argument regarding Dr. Carpenter's schedule.

[8] On December 19, 2023, Plaintiff submitted a notice of supplemental authority, pointing out a judge in the Western District of Louisiana recently issued an order which deferred ruling on a motion for summary judgment filed by BP based on similar arguments raised here. Doc. 36 (referencing *Malveaux v. BP*, W.D. La. Case No. 6:22cv-2633). The undersigned does not find that 2-page order to be persuasive. First, the order does not address the parties' arguments in detail and states only that: "The Court has considered the Motion to Defer Briefing set forth in Plaintiff's Opposition, and it finds that it is appropriate under these circumstances to grant such a Motion." Second, a motion to extend the case management deadlines was still pending in that case when the order was issued whereas, here, the Court denied such a motion before BP moved for summary judgment. Third, as is discussed throughout this Report and Recommendation, Plaintiff already disclosed her expert reports in this case and yet failed to show any of the Exponent discovery was needed to produce those reports.

**B.    Prejudice to BP**

The undersigned also finds Plaintiff has not shown her untimely expert disclosures are harmless.  Plaintiff disclosed Dr. Sahu's and Dr. Carpenter's reports 38 days after the September 29, 2023 expert disclosure deadline.  If the Court were to excuse the untimely reports and maintain the current CMO deadlines, instead of having 75 days to review the reports, depose Drs. Sahu and Carpenter, and formulate rebuttal reports, BP would have less than half that time to complete those tasks.  This is unfair and prejudicial to BP, as it would essentially grant Plaintiff an extension of her expert disclosure deadline, which the Court previously found no good cause for, while at the same time reducing the amount of time the CMO provided for BP to respond to Plaintiff's reports.

Plaintiff argues BP has not been prejudiced by the untimely disclosures because Dr. Carpenter's and Dr. Sahu's opinions "remain substantially similar to those provided in previous BELO cases."  Doc. 43 at 6; *see also id.* ("It is worth mentioning that Dr. Carpenter, Plaintiff's causation expert, continues to rely on the same data and methodology as before, and BP has already deposed him on these topics on numerous occasions.").  However, this argument undermines Plaintiff's justification for her untimely disclosures; if Dr. Carpenter's and Dr. Sahu's reports in this case are essentially the same as the reports they have produced for other BELO cases: (1) Plaintiff had no excuse for not disclosing them by the September

29 deadline; and (2) the arguments she has made for delaying her expert disclosures have been disingenuous and made in bad faith.

For example, within the motion to excuse, Plaintiff states that: (1) her causation expert "continues to rely on the same data and methodology as before, and BP has already deposed him on these topics on numerous occasions," Doc. 43 at 6; (2) her untimely disclosures were "a necessary, remedial measure to cure the prejudice Plaintiff faced after BP's improper withholding of thousands of relevant pages of discoverable information, which Plaintiff's counsel and experts needed to review and incorporate into scientifically valid expert reports," *id.* at 8-9; and (3) she "was unable to sufficiently and completely compile the reports of Dr. Carpenter and Dr. Sahu within the Court's time constraints because considerable time was needed to review and incorporate the plethora of third-party documents that have been de-designated in piecemeal fashion by BP in the *Culliver* privilege log dispute," *id.* at 11. Clearly, these statements cannot all be true. Plaintiff is simply grasping at straws in a vain attempt to excuse her dilatory conduct.

Also, despite Plaintiff's assertion that a continuance can cure any potential for prejudice, the undersigned previously found Plaintiff had not established good cause for a continuance and, by not appealing that finding to the district judge, she waived any claim of error regarding that ruling. Granting a continuance now, to cure the prejudice caused by Plaintiff's untimely disclosures, would reward Plaintiff's

dilatory conduct.  In other words, it makes no sense for a party who is denied a continuance to make an untimely disclosure, then argue that disclosure can be rendered harmless through a continuance.

Moreover, granting a continuance would unnecessarily delay this case, and the untimely disclosures have already resulted in additional motion practice.  *See Morrison v. Mann*, 244 F.R.D. 668, 673 n.5 (N.D. Ga. 2007) (finding "plaintiffs' untimely disclosure was plainly harmful, as their disclosure delayed the progress of this case, necessitated the filing of multiple evidentiary motions, and hindered defendants' abilities to prepare adequate defenses").  Thus, Plaintiff has not demonstrated her untimely disclosures were harmless.

### C.    Expert Required to Prove Causation

For Plaintiff to succeed on her claim against BP in this case, Plaintiff must show chemicals associated with the oil spill or response caused her chronic bronchitis.  The causation requirement in a toxic tort case involves a showing of general causation and specific causation.  General causation is concerned with whether a "drug or chemical *can* cause the harm plaintiff alleges," that is, whether a chemical agent "increases the incidence of disease in a group."[9]  *McClain v.*

---

[9] Although there is a category of toxic tort cases which the Eleventh Circuit has recognized as not requiring a showing on general causation, namely those cases where a drug or chemical has been recognized by the medical community as being toxic and capable of causing the injuries alleged by a plaintiff, *McClain*, 401 F.3d at 1239, this case does not fall into that category.  *See In re Deepwater Horizon Belo Cases*, 2020 WL 6689212, at *12.

*Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005). "Specific causation is established by showing that exposure to the allegedly toxic drug or chemical actually caused an individual plaintiff's injury." *In re Abilify (Aripiprazole) Prod. Liab. Litig.,* 299 F. Supp. 3d 1291, 1306 (N.D. Fla. 2018). If a plaintiff does not present evidence as to general causation, there is no need for the court to address specific causation. *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) ("Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.").

It is well settled that to establish general and specific causation, a toxic tort plaintiff must present admissible expert testimony. *Chapman*, 766 F.3d at 1316 ("To prove Fixodent caused Marianne Chapman's CDM, the Chapmans were *required* to have *Daubert*-qualified, general and specific-causation-expert testimony that would be admissible at trial to avoid summary judgment."); *McCLain,* 401 F.3d at 1237. Without such testimony, Plaintiff cannot create a material question of fact. *See id.* Thus, because legal causation can only be established through admissible expert testimony, numerous courts in this circuit and the Fifth Circuit in similar BELO cases, including this Court, have granted summary judgment after excluding a plaintiff's causation expert. *See e.g., In re Deepwater Horizon BELO Cases*, 2020 WL 6689212, at *17 (granting summary judgment in first pool of test cases after excluding plaintiffs' sole general causation expert); 2023 WL 2711573 (N.D. Fla.

Mar. 30, 2023) (granting summary judgment in ocular and sinusitis cases after excluding experts). And Plaintiff does not dispute she needs expert testimony to establish causation.

Thus, declining to excuse Plaintiff's untimely expert disclosures will result in the dismissal of this case. While that is a severe consequence, Plaintiff's counsel has represented numerous BELO plaintiffs in both this circuit and the Fifth Circuit and, therefore, has been aware from the outset about the importance of submitting timely expert reports and that a failure to do so could result in exclusion. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 763778, at *2 (N.D. Fla. Jan. 15, 2021) (Courts "will routinely strike expert reports or exclude expert testimony which is not timely disclosed, even if the consequence is to preclude a party's entire claim or defense[.]") (citation omitted); *Morrison*, 244 F.R.D. at 673 ("the appropriateness of a party's justification [for an untimely disclosure] turns upon whether the party knew or should have known that an expert was necessary before the late stages of the discovery period"). Indeed, while the most recent CMO in this case was issued in May 2023, Plaintiff's counsel: (1) was warned by the initial CMO that "[e]xpert witnesses not timely disclosed … will normally not be permitted to testify at trial"; (2) has been litigating BELO cases for more than four years and discovery from one BELO case may be used in other BELO cases; and (3) has faced

a number of *Daubert* challenges to BELO experts—all of which have been successful—which shows counsel is familiar with the expert issues in this case.

Nevertheless, as described in the preceding sections, Plaintiff willfully disregarded the expert disclosure deadline in the CMO and sought to buy herself the extension the Court previously denied—a denial which she failed to object to—by filing the Rule 56(d) response and the motion to excuse, both of which appear to contain misrepresentations regarding the relationship between the Exponent documents and her ability to meet the expert disclosure deadline. Such gamesmanship has prejudiced BP and should not be tolerated. *See Lamonica v. Hartford Ins. Co. of the Midwest*, 336 F.R.D. 682, 686 (N.D. Fla. 2020) ("Courts should differentiate between 'innocent' mistakes which truly are harmless from intentional acts by a party that are designed to game the system."). Therefore, the untimely expert reports from Drs. Sahu and Carpenter should not be accepted, and the Court should not defer ruling on BP's motion for summary judgment. And without admissible expert testimony, Plaintiff cannot demonstrate a genuine dispute of fact to support her claim that her chronic bronchitis was caused by exposure to chemicals associated with the oil spill and response. Thus, BP's motion for summary judgment should be granted.

Accordingly, it is RECOMMENDED:

1.     That Plaintiff's motion to excuse untimely expert disclosures, Doc. 43,

be DENIED.

2.     That BP's motion for summary judgment, Doc. 36, be GRANTED.

3.     That judgment be entered in favor of BP and against the Plaintiff.

4.     That the clerk be directed to close the file.

At Pensacola, Florida, this 27th day of December, 2023.

*s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.